UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA



FILED
SCRANTON

JAN 3 1 2014

PER _____
DEPUTY CLERK

JAMES OVERLY,                          :

     Plaintiff                      :
                                       :
v.                                     : CIVIL NO. 3:CV-12-0832
                                       :
CHRIS GARMAN, <u>et al.</u>,           : (Judge Kosik)
                                       :
     Defendants                     :

## MEMORANDUM

Plaintiff, James Overly, an inmate confined at the State Correctional Institution at Smithfield ("SCI-Smithfield"), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. He paid the full filing fee in this matter. The matter proceeds on an amended complaint. (Doc. 6.) Named as Defendants are the following SCI-Smithfield employees: Chris Garman, Unit Manager; Bradley Fisher, Correctional Counselor; and Correctional Officers Honstine, Parson, Harper, Clapper and Hazlett. Before the court and ripe for consideration is Defendants' motion to dismiss the amended complaint, or in the alternative for summary judgment.[1] (Doc. 14.)

---

[1] While Defendants have labeled their motion as one to dismiss or in the alternative for summary judgement, they did not file a separate statement of material facts in support of any request for summary judgment as required by M.D. Pa. Local Rule 56. For these reasons, the court will address Defendants' motion solely as one

## I. Allegations of the Amended Complaint

Plaintiff claims that his right to Equal Protection was violated when Defendant Fisher failed to follow proper prison procedure in notifying him of his mother's death. Specifically, he claims that on November 21, 2011, Fisher said he received an email from the prison Chaplain on November 7, 2011, about the death. Plaintiff's siblings had notified the prison on November 6, 2011. Plaintiff claims that as his counselor, Fisher had the duty to inform him of the death and of the availability of the Chaplain's services. According to Plaintiff, when his stepfather passed away, he was offered services from the Chaplain and received a condolence letter from the prison's Superintendent.

Plaintiff claims that the failure to offer him this same treatment when his mother died caused him physical and emotional distress due to his age and frail health. At the time, Plaintiff was 70 years old. Plaintiff told Defendant Garman about Fisher's actions, but claims Garman never addressed the matter.

Plaintiff further claims that because he went to Garman, he was retaliated against in the form of being moved from cell to cell. He further claims that Defendant Honstine harasses him by not allowing him sufficient time to eat his meals. According to Plaintiff, he is supposed to get 20 minutes pursuant to prison policy. He claims Defendant Garman is aware of the staff's behavior through the grievances he

seeking to dismiss the complaint.

filed.

Plaintiff also claims that his cell was searched for no reason.  He claims that
Defendants Hazlett and Clapper performed an investigative cell search and
confiscated large amounts of his personal property.  He believes that they altered his
television in some way since it was in fine condition before he was moved to the
Restricted Housing Unit.  He claims that his procedural due process rights were
violated when he was not given an opportunity to send his television out for repairs or
to his family before it was destroyed.

He further contends that on another occasion, his cell was searched by
Defendants Harper and Parson.  His personal property was packed by Defendants.
When he received a Confiscated Items Receipt, he claims it stated "Destroyed All
Items."  He claims this was a denial of his right to procedural due process because he
should have been provided with an opportunity to challenge the decision to destroy
his property, prior to the destruction taking place, and given the choice to send his
items home.  He further claims that other items of his personal property were
destroyed in July of 2010.  He does not state who was responsible for the destruction,
but claims that the property lost included a cable converter box, a burial contract and
his will.

Finally, Plaintiff alleges that his mail and papers were scattered and mixed up
on the floor of his cell in March of 2012.  He believes Defendant Honstine is

3

responsible for this conduct because she returned to work from vacation the day this occurred. He claims that Honstine crams his mail through his prison door slot instead of opening the cell door and placing the mail inside. He claims that the grievances filed against Honstine are always rejected. Plaintiff has told Defendant Garman about the problems with Honstine. Based on the foregoing allegations, he seeks declaratory, compensatory and punitive relief.

## II.   Standard of Review

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d

4

868 (2009)(quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not

enough, and a court "is not bound to accept as true a legal conclusion couched as a

factual allegation...." Twombly, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis."

Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal

elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine

whether the facts alleged in the complaint are sufficient to show that the plaintiff has

a 'plausible claim for relief.'" Id. at 211 (quoted case omitted).

In considering a motion to dismiss, the court generally relies on the complaint,

attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263,

268 (3d Cir. 2007). The court may also consider "undisputedly authentic

document[s] that a defendant attached as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the [attached] documents." Pension Benefit Guar.

Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover,

"documents whose contents are alleged in the complaint and whose authenticity no

party questions, but which are not physically attached to the pleading, may be

considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.

2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir.

2002)(holding that "[a]lthough a district court may not consider matters extraneous to

the pleadings, a document integral to or explicitly relied upon in the complaint may

be considered without converting the motion to dismiss into one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III.  Discussion

### A.  Claims for damages against Defendants in their Official Capacities

Defendants first move to dismiss all claims brought against the Defendants in their official capacities for money damages as barred by the Eleventh Amendment. As a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the ... States ....", U.S. Const. Amend XI.  By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies.  Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune frm lawsuits in federal courts brought against them by citizens. <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 54

(1996). This proscription directly applies here. Pennsylvania expressly withheld consent to suit when it enacted its exceptions to sovereign immunity. See 42 Pa. C.S. § 8521. Therefore suits against the Commonwealth of Pennsylvania and Pennsylvania officials acting in their official capacity are barred by the Eleventh Amendment.

**B.     Failure to Exhaust Administrative Remedies**

Defendants next seek the dismissal of all remaining claims on the basis of Plaintiff's failure to exhaust his administrative remedies prior to commencing this action. Pursuant to 42 U.S.C. § 1997e(a), Plaintiff is required to exhaust his available administrative remedies. This section provides as follows:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Pursuant to 42 U.S.C. § 1997e(a), the exhaustion of available administrative remedies is mandatory. Booth v. Churner, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking.

7

Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000). "[I]t is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Id. at 73, citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement". Nyhuis, 204 F.3d at 71. Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to 42 U.S.C. § 1983 or any other federal law. Jones v. Bock, 127 S. Ct. 910, 918-19 (2007). Nevertheless, "failure to exhaust is an affirmative defense that must be pled and proven by the defendant." Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (citing Ray v. Kertes, 285 F.2d 287, 295 (3d Cir. 2002)).

The PLRA mandates that a prisoner "properly" exhaust his or her administrative remedies before commencing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2387 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek [ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 2387 (quoting Porter, 534 U.S. at 525.) Failure to comply with procedural requirements of the applicable prison's

8

grievance system will result in a procedural default of the claim.  Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004)("[P]rison grievance procedures supply the yardstick for measuring procedural default.").  Procedural default is a question of law.  Id. at 232.

The administrative remedies for inmate grievances are provided for in Pennsylvania Department of Corrections Administrative Directive 804 ("DC-ADM 804").  (Doc. 15-1, Hollibaugh Decl. ¶ 6.)  The Pennsylvania DOC has a three-tiered grievance procedure which allows inmates to raise complaints about issues related to their confinement.  (Id. at ¶ 7.)  The first step in the inmate grievance process is the initial review.  Grievances must be filed within 15 working days of the event on which the grievance is based.  (Id. at ¶ 8.)  An inmate who is dissatisfied with the initial review decision is permitted to appeal to the Superintendent.  (Id. at ¶¶ 10-11.)  Prior to December 8, 2010, appeals were to be filed within 10 working days, however, pursuant to an amendment to Department policy, this time period was extended in December 2010 to 15 working days.  (Id. at ¶ 10.)  An appeal to final review may be sought through the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") by filing an appeal to that office within 15 working days of the date of the Superintendent's decision.  (Id. At ¶ 12.)

Defendants state that during the relevant time period, Plaintiff filed 24 grievances.  (Id. at ¶ 14.)  Of these grievances, only one grievance (#305257) was

appealed to the Superintendent. (Id. at ¶ 15.)  However, Plaintiff failed to appeal that grievance to final review.  Because Plaintiff failed to exhaust his available administrative remedies, Defendants argue that he has procedurally defaulted, and that his amended complaint should be dismissed with prejudice.

Failure to exhaust administrative remedies is an affirmative defense that must be pleaded and proved by a defendant. Jones v. Bock, 549 U.S. 199, 211 (2007); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002.)  The Third Circuit Court of Appeals has thus instructed that although in "appropriate cases" an inmate's failure to exhaust available administrative remedies may be raised as a basis to dismiss a complaint on the pleadings, Brown, 312 F.3d at 111, failure to exhaust is an affirmative defense that must be proven by the defendant. Jones, 549 U.S. at 211; Ray, 285 F.3d at 295. Moreover, "[I]f there is a question as to availability of administrative remedies, summary judgment or dismissal is inappropriate." Mendez v. Sullivan, No. 3:11-CV-287, 2012 WL 760724, *4 (M.D. Pa. Mar. 7, 2012).  See also, e.g., Brown, 312 F.3d 109 (3d Cir. 2012)(dismissal inappropriate where availability of administrative remedies was disputed because prison officials told inmate to wait to file a grievance until after completion of an investigation); Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003)(district court erred by dismissing an inmate's complaint when he claimed that administrative remedies were unavailable because prison officials denied him necessary grievance forms); Kantamanto v. King, 651 F. Supp. 2d 313 (E.D. Pa.

2009)(summary judgment inappropriate because disputed issues of material fact existed as to whether an inmate was denied access to proper forms, whether inmate knew he could appeal grievance through a letter to the Commissioner, and whether the letter was sent).

In the instant case, Plaintiff alleges in his amended complaint that he ". . . filed grievances to this complaint and completed the grievance process to the greatest extent possible." (Doc. 6, Am. Compl. at 2.) He states at various points throughout the complaint that he filed numerous grievances, many of which were rejected because they were not filed within 15 days. Plaintiff alleges that the grievances were filed within 15 working days. Moreover, in his opposition brief in response to Defendants' exhaustion argument, he again states that he exhausted his grievances to the extent possible. In explaining this statement, he states that some were filed to final review, while on other occasions, grievances were refused, destroyed and/or not responded to by staff. (Doc. 16 at 5, 6.) In light of these allegations, the court will not grant Defendants' motion to dismiss Plaintiff's claims on the basis of failure to exhaust administrative remedies.

## C.   Denial of Procedural Due Process/Property Deprivation

Even if Plaintiff has exhausted his claims with respect to the deprivation of personal property without due process, his claims are subject to dismissal for the following reasons. A civil rights claim cannot be brought to vindicate a prisoner's

right to property when the deprivation occurs as a result of a tortious and unauthorized act where an adequate remedy exists to compensate those who have suffered tortious loss at the hands of the state. Parratt v. Taylor, 451 U.S. 527, 543-44 (1981).  The United States Supreme Court has extended Parratt to include intentional deprivations of property, holding that where a prisoner has an adequate post-deprivation remedy under state law for any loss suffered to his property, a civil rights claim is not available.  Hudson v. Palmer, 468 U.S. 517, 532-33 (1984).  The federal courts in Pennsylvania have recognized that both the DOC internal grievance procedure and the availability of a state tort suit in state court provide adequate post-deprivation remedies so as to satisfy due process requirements under Hudson. See, e.g., Edmonds v. Sobina, 295 F. App'x, 214, 217 n.5 (3d Cir. 2008); Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995); Payton v. Horn, 49 F. Supp. 2d 791, 795 (E.D. Pa. 1999). Consequently, regardless of whether the deprivation of property in the instant case was the result of intentional or negligent conduct, Plaintiff may not obtain relief via a civil rights complaint, if he has adequate alternative remedies.

Plaintiff can assert any claim relating to the deprivation of his personal property via the DOC's administrative remedy system.  He is obviously aware of this remedy since he states that he has filed numerous grievances with respect to his claims.  He may also assert a loss of property claim in Pennsylvania state court.  Since both of these remedies are available to him, Plaintiff's claims with respect to the

improper deprivation of property will be dismissed for failure to state a claim

### D.    Equal Protection Violation

Plaintiff contends that his Equal Protection rights were violated when Defendant Fisher failed to advise him of his mother's death until November 21, 2011, when he learned of this information on November 7, 2011. He claims that he was denied equal protection because when his stepfather passed away, prior to this occasion, he was told of the death and offered the services of the Chaplain's department.

The Equal Protection Clause of the Fourteenth Amendment requires all persons "similarly situated" to be "treated alike" by state actors. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). To state an equal protection claim, Plaintiff must allege (1) that he is a protected class member and (2) that he was treated differently from similarly situated persons outside his protected class. See Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 423-24 (3d Cir. 2000); Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990). "Protected classes include those based upon suspect distinctions, such as race, religion, and alienage, and those impacting fundamental rights." Trefelner ex. rel. Trefelner v. Burrell Sch. Dist., 655 F. Supp. 2d 581, 589 (W.D. Pa. 2009). An equal protection claim may be established for a "class of one" where a plaintiff shows that "(1) the defendant treated him differently than others similarly situated, (2) the

defendant did so intentionally, and (3) there was not rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

In the instant case, even if Plaintiff has exhausted his Equal Protection claim, it is clear the claim fails for the following reasons. First, Plaintiff is not a member of a suspect class. He only alleges a difference in treatment between the way he was treated when his stepfather passed away and when his mother passed away. There are no allegations that Fisher's failure to inform him immediately was a result of an intention to discriminate between him and any other individual similarly situated. For these reasons, his claim is subject to dismissal.

## E.   Remaining Claims

Defendants do not specifically address the merits of Plaintiff's claims of retaliation, challenges to the disposition of grievances filed, and throwing of mail on his cell floor. They only seek to dismiss these claims on the basis of failure to exhaust. However, even in cases where the prisoner has paid the filing fee, the court is obligated to engage in a screening process and dismiss a complaint or any portion thereof if it fails to state a claim upon which relief can be granted. See 28 U.S.C. § 1915A(b); see also Hart v. Whalen, No. 08-CV-0828, 2008 WL 4107651 (M.D. Pa. Dec. 22, 2009).

In the instant case, each of Plaintiff's above allegations fail to state a claim and will be dismissed for the following reasons. To state a viable § 1983 claim, a plaintiff

must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Natale v. Camden County Corr. Facility, 318 F.3d 575, 580-81 (3d Cir. 2003). Personal involvement in the alleged wrongdoing is necessary for the imposition of liability in a civil rights action. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005); Sutton v. Rasheed, 323 F.3d 236, 249-50 (3d Cir. 2003). A supervisory defendant may be liable if he directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Additionally, participation in the after-the-fact review of a grievance is not enough to establish personal involvement. See, e.g. Rode, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 ( 3d Cir. 2006)(allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation).

In the instant case, Plaintiff seeks to impose liability on Defendant Garman due to his unfavorable responses or failure to respond to grievances and complaints that Plaintiff made about the other Defendants' conduct, after it had occurred. This does not establish the requisite personal involvement to impose liability upon Garman.

Further, Plaintiff's allegations against Honstine with respect to (1) cramming mail through his cell door slot creating a mess on his cell floor and (2) not allowing him 20 minutes to eat, also fail to state a claim. Neither of these assertions rise to the level of a constitutional violation. To establish an Eighth Amendment violation, a plaintiff must show (1) he suffered a deprivation that was "objectively, sufficiently serious," resulting in "the denial of the minimal civilized measure of life's necessities," and (2) the responsible prison official acted with "deliberate indifference to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotation marks and citations omitted).

It may be upsetting to Plaintiff to have his mail pushed through his cell door slot, as opposed to being placed neatly in his cell. Plaintiff may also prefer to have 20 minutes within which to eat his meals, as opposed to a shorter period of time. However, neither of these allegations rise to the level of an Eighth Amendment violation.

Finally, Plaintiff sets forth general allegations of retaliation. As the Third Circuit has explained, "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mack v. Yost, 427 F. App'x 70, 72 (3d Cir. 2011)(quoting Mitchell v. Horn,

318 F.3d 523, 530 (3d Cir. 2003)).  Once a prisoner shows these elements, the burden

shifts to prison officials to prove that they "would have made the same decision

absent the protected conduct."  Raiser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).

      Filing an administrative grievance against prison officials is a protected activity

for purposes of a retaliation claim.  See Robinson v. Taylor, 204 F. App'x 155, 157

(3d Cir. 2006).  However, based upon the allegations set forth by Plaintiff in the

complaint, he fails to show that any adverse action by Defendants sufficiently

deterred him from exercising his constitutional rights.  He merely alleges that

Defendants would move him from one cell to another, and on two occasions

conducted cell searches.  With respect to at least one of these searches, he

acknowledges that the search was pursuant to an investigation, and as such, this

undermines any assertion that it was retaliatory in nature.  More importantly,

however, it is clear from Plaintiff's allegations that neither the cell moves, nor the

searches, constituted adverse action sufficient to deter him from exercising his

constitutional rights,  because he continued to file grievances against Defendants.  For

these reasons, his retaliation claim is subject to dismissal.  An appropriate Order

follows.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JAMES M. OVERLY,                           :
                                           :
          Plaintiff                        :
                                           :
     v.                                    :  CIVIL NO. 3:CV-12-0832
                                           :
CHRIS GARMAN, et al.,                      :  (Judge Kosik)
                                           :
          Defendants                       :

## ORDER

NOW, THIS *31st* DAY OF JANUARY, 2014, in accordance with the

accompanying Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS**:

1.   Defendants' motion to dismiss (Doc. 14) is **granted**.  All claims in the
     complaint are dismissed in their entirety.

2.   The Clerk of Court is directed to **close this case**.

3.   Any appeal from this order will be deemed frivolous, lacking in
     probable cause and not taken in good faith.

EDWIN M. KOSIK
United States District Judge